Opinion of the court by
Judge Whyte.
The plaintiff was the security of Sherrill in obligations to the amount of about $260. Sherrill had purchased from M’Teer, one hundred and fourteen acres oil and, hut had no bond for conveyance from M’Teer. In order to procure the plaintiff, Wright, to become security as above, Sherrill got M’Teer to give Wright a bond for title to the said land. At the time of these transactions Sherrill was indebted to the defendant James Wilson and his brother Ignatius Wilson, in about $250, and being desirous to secure the Wilsons their debt, desired Wright to surrender up the bond for the title, which he held on M’Teer. This was agreed to by Wright, believing the land was worth the debts above named, and a deed of trust was executed by M’Teer and Sherrill to secure the above debts,in which it was stipulated, that if the debts were not paid against the 1st day of January, 1822, that at the request of either Sherrill, M’Teer, the plaintiff Wright, or the Wilsons, the trustee should sell, first giving 30 days notice. Sherrill *295 soon after this run off, being completely insolvent.— Wright, in the month of November, 1821, went on busi ness into South Carolina, and did not return until February, 1822: during his absence the land was sold by the trustee, by the direction and request of one or both the Wilsons, and they became the purchasers for the sum of $50, the defendant James, bidding off the land at'that price, and took possession and has received the rents and profits. It appeared from the proof in the cause, that the land was worth five or six hundred dollars; the chancellor set aside the sale made by the trustee, and directed a resale to be made by the clerk and master: upon this resale Matthew H. Boyle became the purchaser for the sum of three hundred dollars. After which an account was ordered to be taken by the clerk and master, and a report to be made; which being done, the cause was finally heard on the 3d day of June, 1822, and a final decree rendered therein in favor of the plaintiff, and an appeal taken by the defendants to this court.
The principal question between these parties arises upon the sale, made by the trustee Wilkinson, under the deed of trust. The defendants, the Wilsons, insist, that the sale by the trustee being duly advertised in the Knoxville Register newspaper, after the 1st day of January, 1822, and thirty days before the day of sale, and the sale having been required to be made by one of the Wilsons; all of which proceedings were according to the terms of the deed of trust, and authorized by it, and the sale being conducted in an open, fair, and leisurely manner, the biddings being kept open for two or three hours, that the chancellor was not by the principles and practice governing a court of equity, authorized to set -the sale aside'’ and order a resale, founding himself upon inadequacy of consideration alone, which although it may often prevent the interference of a court of equity in lending its aid to compel the specific performance of a contract, yet will seldom act upon that principle in the case of executed contracts, to set them aside. This is a question dependent uponauthority. Lord Chancellor Thurlow *296 iq Gwynne vs. Heaton, (1 Br. Ch. Ca. 9,) speaking on this . . , , , point, says: to set aside a conveyance, there must be an inequality so strong, gross and manifest, that it must be impossible to state it to a man of common sense without producing an exclamation at the inequality of it. The principle then is loose enough, looser than I wish to be established in a court of justice; but, (continues the chancellor) to reverse the principles which have been laid down by successive great names, would be to alter the rules of property. The inequality in the present case is ten to one at the least, and rather perhaps it may be said, twelve to one, covering far enough the principle laid down by Lord Thurlow. The same chancellor, in the same case, lays down the rule by which this considerable inequality is to be ascertained; it is, says he, referable to cases already determined. Acting upon this rule, I shall cite a case or two. In Herne vs. Meers, (I Vern. 465,) the defendant by his answer insisted, that he was a purchaser for a valuable consideration, the defence insisted on in the present case: at the hearing the plaintiff’s counsel relied upon the inadequacy of the price paid; and by the decree the Lord Chancellor declared, that the bargain made by Sir Thomas Mears with Cox, Junr. was not fairly obtained in respect of the circumstances young Cox was in, but ought in conscience to be made void, the premises by him purchased, being more than double the value of the money paid by him, therefore the defendant Mears was to be lookedupon as a mortgagee,and gave directions accordingly. The same was ordered by the chancellor in the present case, orderingthe defendant Wilson to account for the rents and profits, making him proper allowances for his care and trouble and suitable disbursements. So in the late case of Heathcote vs. Paignon, (2 B. C. C. 167,) the master of the Rolls, Sir Lloyd Kenyon, afterwards Lord Kenyon, set the purchase of an annuity aside, the price given being near two-thirds below the real value of the annuity, and one-fifth below what appeared to be the market price, and upon appeal to the Lord Chancellor, the decree was affirmed. These *297 two cases I have cited not only for the purpose of shewing that contracts are set aside upon inadequacy of price, or consideration, but also, from their being decided at so great length of time from each other, they thereby shew the more strongly, the fixed and determined sense a court of equity entertains of transactions of this kind.
In setting aside contracts for inadequacy of consideration, Mr. Sugdon expresses himself thus: “the truth is, that in setting aside contracts on account of an inadequate consideration, the court proceeds on fraud. In all such cases however, there must be gross inequality in the contract. (Sugden on Vendors, 193.
The second objection against the decree is irregularity, the cause being heard against the Wilsons without a pro confesso taken againstM’Teer and Sherrill. This objection cannot be entitled to greater weight, than if no steps had been taken at all to make these persons parties, and they are not necessary parties; they have no interest, having appropriated the land by the deed of trust to answer a special purpose, which they considered it equal to, and nothing more: but if they had any interest, the decree cannot bind it beyond the obligation of the trust. The fund, and the parties having the power over it being before the court, and acted upon by the decree, is all that is necessary to render the proceedings valid.
The matter of the third and fourth objections of the counsel, was before the chancellor, who has necessarily acted upon it, and we see no reason to impeach the decree on that ground. Let the decree of the chancellor be affirmed, and the costs of this appeal be paid by the defendant James Wilson.
Decree affirmed.